## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

BAKUL BADWAL, *individually and on behalf of all others similarly situated*,

                  Plaintiff,

v.

ALO, LLC d/b/a ALO MOVES,

                  Defendant.

Case No.: 1:23-cv-24164-CMA

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE OR STAY, AND INCORPORATED MEMORANDUM OF LAW

Defendant Alo LLC d/b/a Alo Moves ("Alo Moves") hereby moves to dismiss the Complaint filed by Plaintiff Bakul Badwal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Alo Moves, pursuant to the parties' forum selection clause, moves to transfer the venue of this case to the Western District of Washington, or alternatively to stay the case in light of a nationwide class settlement reached in the first-filed, substantially identical case of *Hayek, et, al v. Alo, LLC*, No. 2-23-CV-01614 (W.D. Wash.).

## INTRODUCTION

Plaintiff's claim is time-barred and should be dismissed. This dispute arises entirely out of Plaintiff's alleged "registration" and "subscription" with Alo Moves, a digital workout video platform. Plaintiff's sole cause of action, under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), relies on his claim that he is a subscriber. However, when Plaintiff signed up for his alleged subscription, he agreed to Alo Moves' Terms of Service ("Terms"), which clearly provide that Washington law governs all claims relating to the program, and that all claims must

be brought within one year: "YOU AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICE MUST COMMENCE WITHIN ONE YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, THAT CAUSE OF ACTION IS PERMANENTLY BARRED."  Siobhan Mason Decl., Exh. A ("Mason Decl.") (emphasis in original).[1]

Plaintiff cancelled his subscription on August 29, 2022, when his free trial turned into a paying subscription (he requested and received a full refund).  Thus, all of his claims arose on or before this date.[2]

Plaintiff waited more than a year before filing a suit on October 31, 2023, just two weeks after a nearly identical nationwide class suit was filed against Alo Moves in the Western District of Washington:  *Hayek, et, al v. Alo, LLC*, No. 2-23-CV-01614 (W.D. Wash.) (the "*Hayek* action").[3]  Even still, Alo, LLC was not named in the present action until November 28, 2023—eighteen months after Plaintiff's alleged subscription ended.  Plaintiff's claims are outside the agreement's one-year limitations period and should be dismissed as untimely.

In the alternative, the Court should transfer the present matter to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a) and the mandatory forum selection clause in Alo Moves's terms, which clearly provide: "you hereby consent to the exclusive jurisdiction and venue in the state and federal court in Seattle, Washington."  Mason Decl., Ex. A.  Alternatively, the

---

[1] This agreement is incorporated by reference into the FAC, based on Plaintiff's claim to have entered a subscriber relationship with Alo Moves.  FAC ¶ 18; *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337 (11th Cir. 2005) (District Court properly considered software purchase agreement when ruling on seller's motion to dismiss, even though the purchase agreement was not mentioned in or attached to the complaint).

[2] To the extent Plaintiff watched any videos, it would have only been during his free trial.  Alo Moves reserves the right to argue that this is insufficient to qualify Plaintiff as a "subscriber" protected by VPPA.  *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (a subscription requires an "ongoing commitment or relationship"); *Peterson v. Learfield Commc'ns, LLC*, No. 8:23-CV-146, 2023 WL 9106244, at *15 (D. Neb. Dec. 8, 2023) ("a 'subscription' requires a 'subscriber' 'to furnish money or its equivalent.'").

[3] The Parties *Hayek* case recently reached a class-wide settlement that, if approved by a Court, would resolve Plaintiff's and the putative class's claims.  However, Plaintiff has indicated that he intends to opt out of the settlement and continue pursuing his claims.

Court should stay this action pending approval of the nationwide settlement reached in the *Hayek* action, which encompasses Plaintiff's claims.

## FACTUAL BACKGROUND

### I.      The FAC's Allegations

The crux of Plaintiff's FAC is that Alo Moves "tracked" the videos he allegedly watched through an Alo Moves subscription, and "reported the viewing history to Facebook" without his consent. FAC ¶ 3. Plaintiff does not identify a single video he watched on Alo Moves, much less when he watched it. Instead, he merely recites, "During the relevant time period, Plaintiff used their digital subscription to request, obtain, and/or view prerecorded video content on Defendant's website while logged into the Facebook account." *Id*. ¶ 22.

The VPPA only applies to "consumers," defined as "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). According to the FAC:

> 18. Plaintiff is a "consumer" as defined by the VPPA in that Plaintiff is subscriber of goods or services from Defendant. Specifically, Plaintiff became a digitial [sic] subscriber by registering for an account with Defendant and providing personal identifying information at the time of registration.
>
> 19. At the time of registration, on information and belief, Plaintiff provided and Defendant captured Plaintiff's IP address, which is a unique number assigned to all information technology connected devices, that informed Defendant as to Plaintiff's city, zip code, and physical location.
>
> 20. Plaintiff's registration reflected a commitment by Plaintiff and granted Plaintiff access to restricted video content offered by Defendant.

FAC ¶¶ 18-20, *see also id*. ¶ 9.

The FAC alleges in general terms that Alo Moves failed to provide Plaintiff with "any notification" or "a reasonable opportunity to discover the information of its alleged practices," and

without his "informed, written consent."  FAC ¶¶ 5, 34-38, 42.  He claims that because Alo Moves "actively concealed" its practices, the "applicable statute of limitation is tolled."  FAC ¶ 42. However, he never alleges that he lacked knowledge of the practices at issue—either as they were happening, or during the year thereafter.

He brings a single cause of action, under the VPPA, and purports to represent a nationwide class of consumers who, *inter alia*, "were registered users and/or subscribers" of Alo Moves's website and whose video viewing information and "Personally Identifiable Information was disclosed by Defendant to Facebook via the Meta Pixel."  FAC ¶ 39.

Plaintiff has aggressively pursued discovery in this matter, including serving 14 Interrogatories, 51 Requests for Production, and 22 Requests for Admission on Alo Moves, in addition to a third-party subpoena on Meta.  Most of these discovery requests have focused on Plaintiff's putative class claims.[4]

## II.    Judicially Noticeable Facts Concerning Plaintiff's Alo Moves "Subscription"

Although Plaintiff does not allege when he subscribed to Alo Moves, or mention the screen that created this alleged contract, this information, set forth in the attached Declaration of Siobhan Mason, is subject to judicial notice.  See *Maxcess,* 433 F.3d at 1340 (taking judicial notice of purchase agreement and affirming dismissal of complaint based on its terms, including a contractual limitations period).

---

[4] By way of example, Plaintiff Badwal seeks "All Tracking information and data related to the Class Members" (RFP No. 7); "Documents and ESI identifying the total number of Class Members" (RFP No. 8); "Documents and ESI identifying the total number of instances that the Class Members' visits to Your Website were Tracked" (RFP No. 10); and "All analytic data associated with Plaintiff and the Class Members exchanged between You and Meta" (RFP No. 51).  Plaintiff Badwal further asks Alo Moves to "Identify the total number of instances where the Meta Pixel was utilized to Track any person requesting, obtaining, viewing, renting, selecting, and/or purchasing prerecorded video or similar audio visual materials available on Your Website" (Interrogatory No. 2), as well as the "total number of Class Members" (Interrogatory No. 1).

Under the incorporation-by-reference doctrine, this Court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) "the plaintiff refers to certain documents in the complaint," (2) those documents are "central to the plaintiff's claim," and (3) the documents' contents are undisputed.  *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023).  The Eleventh Circuit has repeatedly held that "relationship-forming contracts are central to a plaintiff's claim" and are appropriate for judicial notice under this doctrine.  *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Maxcess,* 433 F.3d at 1340 n. 3).  Here, because Plaintiff's entire case rests on his claim as a "subscriber," the contract that formed this alleged relationship is subject to judicial notice.

Plaintiff started a free trial with Alo Moves on July 30, 2022.  Mason Decl. ¶ 3.  During this process, Plaintiff completed the following sign-up screen:

**Payment Details**

| Card Number | |
| CVC | ? |
| Exp. Month (MM) | Exp. Year (YYYY) |

Today's Total$0.00USD
I have read and agree to the Terms Of Service & Privacy Policy
**The Specifics:** After your free 14-day trial, a recurring charge of USD will automatically apply an
Start a Free Trial

*Id*. ¶ 6.

Immediately above the "Start a Free Trial" button, the screen clearly and conspicuously provides:  "I have read and agree to the Terms Of Service & Privacy Policy."  *Id*. ¶ 7.  The bright blue, underlined links lead to the Terms and Alo Moves's Privacy Policy.  *Id*. ¶ 7.

The Terms begin by explaining that it is "a legal agreement between you and Alo Moves, Inc. … regarding your use of services available at www.alomoves.com, including any

downloadable software program that you are accessing or installing on your device or personal computer and the services available through that software program ….."  This "legal agreement" includes the following choice-of-law provision and forum selection clause:

> **Governing Law; Venue**
>
> These Terms will be governed by and construed in accordance with the laws of the State of Washington, excluding its conflict of law provisions. You agree that any judicial proceedings will be brought in and you hereby consent to the exclusive jurisdiction and venue in the state and federal courts in Seattle, Washington.

*See* Mason Decl., Ex. A.

The Terms also set a one-year limitations period (*id*.):

> **Claims**
>
> YOU AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICE MUST COMMENCE WITHIN ONE YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, THAT CAUSE OF ACTION IS PERMANENTLY BARRED.

The Privacy Policy,[5] in turn, provided:

---

[5] Plaintiff's repeated claim to have not been notified of its contents, which he appears to use to toll the limitations period (*see, e.g.*, FAC ¶ 42), provide an additional basis for taking judicial notice of the Privacy Policy.  *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018); *In re Doubleclick Inc. Privacy Litig*., 154 F. Supp. 2d 497, 503 (S.D.N.Y. 2001); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA claims based on consent where privacy policy disclosed the collection of information); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting motion to dismiss claim brought under the federal Wiretap Act because email users agreed to terms of use and privacy policy); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (dismissing invasion of privacy claim because plaintiff consented to the sharing of his geolocation data); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (dismissing federal Wiretap Act claim and finding plaintiffs consented to collection of information "[i]n light of the clarity of the disclosure, the proximity of the disclosure to the wrongful conduct, and the ability to opt out"); *Garcia v. Enterprise Holdings Inc.*, 78 F. Supp. 3d 1125, 1136–37 (finding consent based on disclosure that "we may share your personal information with our agents, representatives, contractors and service provider"); *Matera v. Google, Inc*., 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) (taking judicial notice of Google's Terms of Service, "various versions of Google's Privacy Policy," and a Google webpage entitled "Updates: Privacy Policy").

*Information We Collect Automatically: . . .*

- **Cookies:**  Our website, online advertisements, and emails use first and third-party "cookies", pixel tags, and other technologies to automatically collect information about you such as browser type, pages viewed, links clicked, and other actions you take in connection with our websites, online advertisements, and email. A cookie is data sent to your Internet browser from a Web server and stored directly on your computer hard drive. Cookies and similar technologies within a web browser allow us to collect and store data as you navigate our website. We use this information for various purposes, including to facilitate web page navigation, display information more effectively, personalize your online experience, to understand how our websites are used by users, market our products and services, measure the success of our marketing campaigns, and for security purposes.

- Most web browsers are set up to accept cookies. You can adjust your browser settings to refuse all cookies or to inform you when a cookie is being placed on your hard drive. However, certain features of ALO MOVES' website may not work properly and you may be required to re-enter certain information each time you use our website.

. . .

*Your Opt-Out Choices*
We also work with third parties such as Google and Facebook to manage our advertising on other websites. Our third party advertising partners may use cookies or similar technologies on our website and other websites to provide you advertising based upon your browsing activities and interests, or to display ads that link back to our site. For more information about how targeted advertising works, you can visit the Network Advertising Initiative's educational page. You can opt-out of some, but not all, online behavioral based advertising by clicking here or by using your browser settings to block cookies or notify you when a cookie is set. If you are in the European Union, click here to opt out of online behavioral based advertising.

Mason Decl., Ex. B.

If Plaintiff did not want to agree to these terms, he could have closed out of the sign-up process and opted not to enroll in his free trial.  Instead, according to the FAC, he completed this process and enjoyed the benefits of his Alo Moves account by watching videos.

**III.   The *Hayek* Action and Nationwide Settlement**

The *Hayek* action was filed on October 20, 2023, nearly two weeks before Plaintiff Badwal filed this suit.  As in Plaintiff Badwal's action, the *Hayek* plaintiffs allege that Alo Moves violated

the VPPA by using the Meta Pixel in connection with fitness videos on the Alo Moves website. The named *Hayek* plaintiffs are residents of Illinois, New York, and New Jersey, and purport to represent a nationwide class of consumers who subscribed to Alo Moves.[6]  Like Plaintiff Badwal, the *Hayek* plaintiffs asserted one cause of action, under the VPPA, seeking damages in the amount of $2,500 per violation, punitive damages, attorneys' fees, and injunctive relief.

On February 21, 2024, Alo Moves and the *Hayek* plaintiffs participated in a full-day mediation before Hon. Edward A. Infante (Ret.) of JAMS, where they reached a nationwide class settlement.  Notwithstanding Alo Moves's contractual one-year limitations period which bars claims that accrued over one year prior (including Plaintiff Badwal's), the nationwide settlement will provide relief to "All persons in the United States who, from October 20, 2021 to Present, watched one or more videos on Alo Moves, and whose video viewing information was disclosed to Meta via the Meta Pixel."[7]  As such, the nationwide settlement covers Plaintiff Badwal's claims pending before this Court.

Alo Moves, through its counsel, promptly informed Plaintiff's counsel of the settlement, and that it would move to stay the present case pending judicial approval of the nationwide *Hayek* settlement.  During the meet-and-confer process, Plaintiff's counsel indicated that while Plaintiff did not intend to intervene in the *Hayek* settlement, he would opt out and continue litigating this case, if needed, on an individual basis.  The Parties have since debated the availability of "reasonable attorney's fees" that "may" be available under VPPA where, as here, continued

---

[6] The Hayek Plaintiffs filed their suit in the Western District of Washington because of the same forum selection clause in the Terms that Plaintiff Badwal agreed to.  *See* Hayek Compl. ¶ 10 ("Venue is proper in this Court because … the Alo Moves website Terms of Service provide that '[A]ny judicial proceedings will be brought in and you hereby consent to the exclusive jurisdiction and venue in the state and federal courts in Seattle, Washington.'").

[7] As part of the settlement, the parties in *Hayek* agreed that the *Hayek* Plaintiffs would re-file their case in Lake County, Illinois.  The new case number for *Hayek* is 26769583.  A Notice of Settlement, confirming the class definition, has been filed but not yet processed by the Court.

litigation would not result in higher fees for a named plaintiff, but instead would only benefit his counsel.

### Legal Standard

To survive a motion to dismiss, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This "plausibility" standard is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Pleading facts that could conceivably support a finding of liability is insufficient. *Twombly*, 550 U.S. at 547; *Iqbal*, 556 U.S. at 680; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (same).

"[T]he Court need not accept as true any allegations contradicted by matters properly subject to judicial notice … or that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia*, 78 F. Supp. 3d at 1136 (internal quotations omitted).

### ARGUMENT

### I.   Plaintiff Entered into a Valid, Enforceable Contract with Alo Moves

Under Washington law, a contract exists where the parties mutually assent to the terms of the agreement. *Yakima Cty. (West Valley) Fire Prot. Dist. No. 12 v. Yakima*, 122 Wn.2d 371, 388-89, 858 P.2d 245 (1993). The same is true in Florida. *See e.g., Australian Therapeutic Supplies Pty Ltd. v. Naked TM, LLC,* No. 22-20493-CIV, 2023 WL 6250511, at *4 (S.D. Fla. Sept. 26, 2023); 11 Fla. Jur. 2d Contracts § 20 (2009). In applying this standard, a party to a contract cannot argue lack of mutual assent if he "was not deprived of the opportunity to read the contract, the contract was 'plain and unambiguous,' the party was capable of understanding the contract, and

no fraud, deceit, or coercion occurred." *Id.*; *see also M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 584, 998 P.2d 305 (2000).

In the context of online transactions, courts interpreting Washington law routinely enforce contracts where, as here, (i) a consumer is expressly told that by clicking a button or otherwise proceeding to make a purchase, they are agreeing to be bound by a set of terms; and (ii) the website contains a link to the terms conspicuously and in proximity to the button that is clicked. *See*, *e.g.*, *Wiseley v. Amazon.com, Inc*., 709 F. App'x 862 (9th Cir. 2017); *Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at *1 (W.D. Wash. Nov. 19, 2019); *see also Patrick v. Running Warehouse, LLC,* No. 22-56078, 2024 WL 542831 (9th Cir. Feb. 12, 2024) (hyperlinked terms of service provided sufficient information to put consumer on inquiry notice of arbitration agreement).  The same is true in Florida.  *See, e.g.*, *Kravets v. Anthropologie, Inc*., No. 22-CV-60443, 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022) (holding that hyperlinks gave adequate notice of defendant's terms of use); *Valiente v. StockX, Inc*., 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (same).

Plaintiff agreed to Alo Moves's Terms and Privacy Policy when he signed up for his free trial by clicking a button to indicate, "I have read and agree to the Terms Of Service & Privacy Policy."  Mason Decl., ¶ 7.  If Plaintiff did not want to agree to the Terms or Privacy Policy, he could have chosen to not complete the sign-up process.  *Id.*

## II.     **Plaintiff's Claims Are Time-Barred**

Parties can contractually modify a statutory period of limitations. *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608, 67 S. Ct. 1355, 91 L. Ed. 1687 (1947) ("[I]t is well established that, in the absence of a controlling statute to the contrary, a

provision in the contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations . . .").

When Plaintiff signed up for his free trial on July 30, 2022, he agreed that "ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICE MUST COMMENCE WITHIN ONE YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, THAT CAUSE OF ACTION IS PERMANENTLY BARRED."  He also agreed to Alo Moves's Privacy Policy, which disclosed the precise conduct at issue in this case, including that the website may use third party cookies and share information with Facebook.  Yet Plaintiff did not file a lawsuit against Alo, LLC until November 28, 2023—eighteen months after being notified and agreeing to Alo Moves's privacy practices, and a full six months after the one-year limitations period had run. Nothing in the VPPA prohibits alterations to the statute of limitations period.  Plaintiff's lawsuit is therefore time-barred.

### a.  The Terms' Limitations Period Is Enforceable

Pursuant to the Terms to which Plaintiff agreed, Washington law governs Plaintiff's claims.  *See* Mason Decl., Exh. A ("These Terms will be governed by and construed in accordance with the laws of the State of Washington.").

"[U]nder Florida law, courts will enforce 'choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'"  *Maxcess, Inc. v. Lucent Technologies, Inc.,* 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni,* 761 So. 2d at 311).  A "contractual provision shortening the period of time for filing a suit was not contrary to a strong public policy."  *Id.* (citing *Burroughs Corp. v. Suntogs of Miami, Inc*., 472 So. 2d 1166, 1169 (Fla. 1985)).  Accordingly, in *Maxcess*, and again in *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151 (11th Cir. 2018), the Eleventh Circuit has repeatedly enforced statutory limitations periods where the terms of use had

choice of law provisions, and the limitations periods were enforceable under the selected states. *See also Kuber v. Prudential Ins. Co. of Am.*, No. 19-80151-CIV, 2019 WL 7899139, at *4 (S.D. Fla. May 31, 2019) (enforcing limitations period under Delaware law).

The facts in this case are analogous to those in *Maxcess and Cita*:  the Parties agreed to Alo Moves's Terms, which contain (a) a choice-of-law provision providing that Washington law governs the Agreement, and (b) shortening the period of time in which any suit for a claim arising out of the Agreement must be filed.  Florida law is clear that the Court should enforce the choice-of-law provision and look to Washington law to ascertain whether it permits parties to contractually shorten the applicable statute of limitations.

Contractual limitations periods—including periods much shorter than Alo Moves's—are enforceable under Washington law.  *See e.g., City of Seattle v. Kuney*, 50 Wash.2d 299, 302, 311 P.2d 420 (1957) (one year contractual limitation on contractor's liability upheld); *Absher Construction Co. v. Kent School District No. 415*, 77 Wash.App. 137, 147-48, 890 P.2d 1071 (1995) (contractual limitation requiring suit on contract to be brought within 120 days after date of substantial completion upheld); *Yakima Asphalt Paving Co. v. Department of Transportation*, 45 Wash.App. at 666, 726 P.2d 1021 (1986) (180-day limitation upheld); *Ashburn v. Safeco Insurance Co.*, 42 Wash.App. 692, 695, 713 P.2d 742 (1986) (one year limitation to bring suit as required by insurance policy not unreasonable).[8]

---

[8] Courts in other states—including Florida—have also enforced similar, or significantly shorter, limitations periods. See, e.g., *Donjoie v. Whitestone Gulf, Inc.*, No. 19-20298-CIV, 2019 WL 4917095, at *3 (S.D. Fla. Oct. 4, 2019) (**six-month** limitations period was reasonable under Florida law and explaining that Florida restrictions on contractual limitations periods do not apply to federal claims); *see also Janda v. T–Mobile USA, Inc.*, 378 Fed.Appx. 705, 709 (9th Cir.2010) (holding under California law that one-year period is substantively reasonable); *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1044–45 (9th Cir.2001) (same, for **six-month** period); *Northlake Reg'l Med. Ctr v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998) (enforcing **90-day** contractual limitations period to ERISA claims); *see also Myers v. W.S. Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1998) ("there is nothing inherently unreasonable about a **six-month** limitations period") (emphasis added); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357-58 (6th Cir. 2004) (affirming district court's dismissal based on **six-month** contractual limitations period in employment application where plaintiff asserted discrimination claims under state law and 42 U.S.C. § 1981, as well as various state tort claims); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1193-

Because Plaintiff's claims were filed more than one year from their accrual date, they should be dismissed with prejudice.

### b.  Plaintiff Does Not Meet His Pleading Burden to Invoke the Discovery Rule

Plaintiff appears to invoke the "discovery rule" by claiming that he was never given "reasonable notice" of Alo Moves's practices.  This rule "toll[s] the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim."  *Giraud v. Quincy Farm and Chemical*, 6 P.3d 104, 108–09, 102 Wash.App. 443, 449 (Wash.App. Div. 3, 2000).  Plaintiff "must allege facts in [his] complaint that render [his] claims 'plausibly' timely."  *Velicer v. Falconhead Cap., LLC*, No. C19-1505JLR, 2020 WL 1182962, at *6 (W.D. Wash. Mar. 11, 2020) (quoting *Twombly*, 550 U.S. at 570).  Because Plaintiff's FAC "is devoid of allegations concerning when [he] discovered the basis of [his] claims," Plaintiff has failed to state a timely claim.

In any event, "Washington courts refuse to apply the discovery rule to legal claims where the underlying facts are generally knowable with reasonable diligence within the limitations period." *Al-Bustani v. Alger*, No. C22-5238JLR, 2023 WL 1778814, at *5 (W.D. Wash. Feb. 6, 2023) (citing cases).  Here, Alo Moves's judicially noticeable Privacy Policy refutes any potential argument that Plaintiff lacked notice (or at minimum, inquiry notice) of the practices at issue here. *See* fn. 6, *supra*.

---

94, 1206, (7th Cir. 1992) (affirming district court's dismissal of Section 1981, breach of contract, and wrongful discharge claims based on **six-month** contractual limitations period in employment contract and affirming the district court's judgment in favor of the plaintiff on the merits of his Title VII claim).

### III.  In the Alternative, the Case Should Be Transferred to the Western District of Washington Under the Forum Selection Clause

If the Court does not dismiss this case outright, it should transfer this matter to the Western District of Washington, pursuant to 28 U.S.C. § 1404(a), given the Parties' agreement that "any judicial proceedings will be brought in and you hereby consent to the exclusive jurisdiction and venue in the state and federal courts in Seattle, Washington."  Mason Decl., Ex. A.

"[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 62 (citations omitted).  Mandatory forum selection clauses are "presumptively valid and enforceable," and this presumption may only be overcome by a "strong showing" that "enforcement would be unfair or unreasonable under the circumstances."  *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972) (mandatory forum-selection clause is prima facie valid and enforceable).

"By agreeing to a forum-selection clause, the parties 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'"  *Atl. Marine*, 571 U.S. at 64.  As a result, when determining a *forum non conveniens* motion under Section 1404(a), the Court need only consider "public interest factors," such as:  "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft v. Reyno*, 454 U.S.235, 241 n.6 (1981); *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009); *see also Fresh*

*Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (11th Cir. 2019).  However, these public

factors "will rarely defeat a transfer motion" so "the practical result is that forum-selection clauses

should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

This is not one of the rare "exceptional cases" in which the Court should reverse the Parties'

forum selection agreement.

- **Administrative difficulties:**  Plaintiff cannot argue in good faith that the case

  should stay here because the Court's docket is relatively empty; indeed, the

  Southern District of Florida has been described as having "one of the busiest

  dockets in the country," *see Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*,

  No. 20-21808-Civ, 2023 WL 4457458, at *9 (S.D. Fla. July 11, 2023).

- **Local interest:**  There is very little localized Florida interest involved in this case.

  Plaintiff alleges a federal claim, on behalf of a nationwide class of individuals, and

  does not contend that Alo Moves is based in Florida.

- **Local laws:**  As discussed above, Alo Moves's Terms contain a valid Washington

  choice-of-law provision that will govern the claims, so a Washington court will be

  "at home" with the governing law.

- **Burden on local citizens:**  Florida citizens should not be burdened with deciding

  a case that is brought on behalf of a nationwide class, subject to Washington law,

  which the Parties agreed should be brought in Washington.

These factors do not weigh so heavily against Washington so as to justify overriding the

Parties' agreement—to the contrary, several factors weigh in favor of a transfer to Washington.

*See Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1348 (11th Cir. 2021) (affirming decision to

enforce forum selection clause after consideration of public factors).

**IV.    In the Alternative, This Case Should Be Stayed Pending Judicial Approval of the Nationwide *Hayek* Settlement**

Alternatively, the Court should stay the present case, which will either be nullified under the nationwide *Hayek* settlement, or potentially limited to a single plaintiff case. Either way, the Parties and the Court should not be forced to continue investing time and resources on putative class claims where Alo Moves has already agreed to provide relief to the putative class.

A district court possesses "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."). District courts within the Eleventh Circuit will exercise their discretion to stay litigation to "promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions," provided that the length of the stay is neither "immoderate [n]or of an indefinite duration." *Boise v. ACE USA, Inc.*, No. 15-Civ-21264, 2015 WL 4077433, at *2 (S.D. Fla. July 6, 2015). District courts are encouraged to control their dockets so as to further judicial economy and conserve parties' resources, particularly when other proceedings may foreclose a case's viability. *Id.* at * 6.

Here, a stay would conserve needless expenditure of the Court's and the parties' resources that would otherwise be wasted on claims resolved by the nationwide *Hayek* settlement, subject to judicial approval. Indeed, the *Hayek* Plaintiffs' claims and Badwal's later-filed claims are virtually identical. Both actions name Alo, LLC dba Alo Moves as the only defendant. Both actions are asserted on behalf of nationwide classes of consumers who subscribed to and watched video

16

content on Alo Moves, and whose personally identifiable information was purportedly disclosed to Facebook via Alo Moves's use of the Meta Pixel.  And both actions assert only one cause of action based on Alo Moves's alleged violation of the VPPA by allegedly disclosing users' personally identifiable information to Facebook via the Meta Pixel without their consent.

Even if Badwal individually opts out of the *Hayek* settlement, the settlement will resolve the claims of the putative class, transforming this case from a nationwide class action seeking hundreds of millions of dollars into a single-plaintiff matter seeking just $2,500 in statutory damages.  Alo Moves should not be forced to waste time and resources responding to Badwal's class action complaint and class-focused discovery requests where, as here, it has already agreed to provide relief to all of the putative class through *Hayek*.  Accordingly, should Plaintiff Badwal opt out of the *Hayek* settlement, his class-wide claims in this action should remain stayed pending judicial approval of the nationwide settlement.  Of course, a stay will not be indefinite.  Instead, it will likely last just six months while the *Hayek* settlement is approved.  In the unlikely event the *Hayek* settlement is not approved, the parties can simply notify the Court and proceed with this litigation, having faced minimal delay and no harm.

## CONCLUSION

Plaintiff should not be permitted to continue wasting Alo Moves's or the Court's resources on a case that is time-barred.  This case should be dismissed outright pursuant to the Parties' contractual agreement to a one-year limitations period.  In the alternative, however, Alo Moves requests that the Court transfer this matter to the Western District of Washington or stay the case pending judicial approval of the nationwide *Hayek* settlement.

## <u>CERTIFICATE OF CONFERRAL</u>

Undersigned counsel has conferred in writing with Plaintiff's counsel pursuant to Local Rule 7.1(a)(1) and, pursuant thereto, certifies that Defendant's counsel has conferred with all parties or non-parties who may be affected by the relief sought in the Motion to Transfer Venue in a good-faith effort to resolve the issues raised in the Motion and has been unable to do so.

Dated:  March 13, 2024                         Respectfully submitted,

By:<u>/s/ *Meegan B. Brooks*</u>
Nicholas J. Secco (110091)
71 S. Wacker, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4955
Facsimile: 312.767.9192

Meegan B. Brooks
Stephanie A. Sheridan
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:  628.600.2250
Facsimile:  628.221.5828
Email: nsecco@beneschlaw.com
       mbrooks@beneschlaw.com
       ssheridan@beneschlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Meegan B. Brooks
Meegan B. Brooks